# EXHIBIT X – Declaration of Mary Hollingsworth

# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. DANIEL GINGERICH, *Defendant*. | Case No. |

## AFFIDAVIT OF MARY HOLLINGSWORTH IN SUPPORT OF THE UNITED STATES' EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER

I, Mary Hollingsworth, hereby state as follows:

1. I represent the United States in the above-captioned case. I submit this declaration in support of the United States' Ex Parte Motion for Temporary Restraining Order. I have personal knowledge of the facts stated in this declaration and, if called upon to do so, could and would testify competently thereto.

2. I am duly licensed to practice law in Arizona and am a Senior Trial Attorney in the Wildlife and Marine Resources Section of the U.S. Department of Justice's ("DOJ") Environment and Natural Resources Division. I have been employed by DOJ since 2011.

3. I have reviewed all inspection reports prepared by the U.S. Department of Agriculture's ("USDA") Animal and Plant Health Inspection Service ("APHIS") inspectors for Daniel Gingerich's facilities and APHIS employees' declarations, and have spoken with APHIS employees and the Director of Operations for a dog rescue organization who has communicated

1

with Gingerich and/or his employees or agents. The information and assessment set forth in this affidavit is based on those sources.

4. For over a year after Gingerich was issued a license, he prevented APHIS inspectors from conducting an inspection to check Animal Welfare Act ("AWA") compliance at the facility that was approved at that time—Site 1. Ex. B (Maxwell Declaration) ¶ 4.

5. USDA was finally granted access to Site 1 in March 2021. APHIS inspectors cited Gingerich for, among other things, brokering dogs without a valid license. Gingerich holds a class A license, which allows him to sell only those dogs who are bred and raised at one of his USDA-approved sites. Brokering—purchasing and reselling an animal—requires a class B license. 9 C.F.R. § 1.1 (definition of class "B" licensee). USDA had discovered through another licensed breeder that Gingerich was brokering. Maxwell Decl. ¶ 5. APHIS inspectors also cited him for failing to have any acquisition or disposition records for hundreds of dogs and for records missing required information for other dogs he had disposed of. Ex. T (April 7, 2021 Inspection Report) at 3-7. Gingerich went so far as to destroy the cage cards for 505 puppies, which included vital information USDA needed to track the animals. *Id.* at 7. Under the AWA, Gingerich is required to retain such records for a year after an animal was disposed of. 9 C.F.R. § 2.80.

6. Gingerich was subsequently cited multiple times for failing to present any acquisition or disposition records or complete records for hundreds of dogs. *See* Ex. P, Part 1 at 8-12 (July 7, 2021); Ex. N at 7-11 (Aug. 11, 2021); Ex. O at 5-6 (Aug. 25, 2021); Ex. Z at 2-3 (Aug. 30, 2021); Ex. Q at 7-12 (Sept. 15, 2021). Gingerich also has a pattern and practice of failing to maintain complete and accurate cage cards to identify puppies. Ex. P (July 7, 2021 Inspection Report) at 10.

7. Additionally, Gingerich has repeatedly refused to assign an official form of identification for each of his dogs, making it difficult to confirm the whereabouts of dogs and ensure they are receiving adequate care. *See* Ex. U (April 21, 2021 Inspection Report) at 2; Ex. P (July 7, 2021 Inspection Report) at 6-7; Ex. M (July 28, 2021 Inspection Report) at 4; Ex. S (July 30, 2021 Inspection Report) at 2; Ex. N (Aug. 11, 2021 Inspection Report) at 6-7; Ex. Z (Aug. 30, 2021 Inspection Report) at 2; Ex. Q (Sept. 15, 2021 Inspection Report) at 6-7.

8. Gingerich also has a pattern and practice of conducting regulated activities at unapproved sites. Maxwell Decl. ¶¶ 11, 14; *see also id.* ¶ 33; Ex. V (June 14, 2021 Inspection Report) at 2. When asked on one occasion to provide the addresses of all of the unapproved facilities on one occasion, Gingerich claimed that he could not remember the addresses. Maxwell Decl. ¶ 11. In June 2021, USDA learned from a member of the public that Gingerich was conducting regulated activity at an unapproved location. *Id.* ¶ 15. When APHIS inspectors attempted to conduct an inspection of an unapproved facility in June 2021 to check on AWA compliance and the welfare of the dogs, Gingerich denied the inspectors access to the facility. *See id.* ¶¶ 15-18; *see also* Ex. V (June 14, 2021 Inspection Report) at 3. The Iowa Department of Agriculture and Land Stewardship also received information about additional unapproved locations. Maxwell Decl. ¶¶ 20, 21, 23. On July 16, 2021, Gingerich admitted to an APHIS inspector that he was housing dogs at another unapproved location, Site 7. Maxwell Decl. ¶ 24; *see also* ¶ 27.

9. On July 28, 2021, during an inspection of Site 1, APHIS inspectors discovered that Gingerich was hiding dogs in two buildings that had not previously been identified by Gingerich. *See* Ex. M (July 28, 2021 Inspection Report) at 4-5; Maxwell Decl. ¶¶ 28, 29. During an inspection in August 2021, the Site 1 manager disclosed that he had been aware that dogs

3

were in those buildings, but Gingerich had directed him not to disclose that fact to USDA. Maxwell Decl. ¶ 34. On July 29, 2021, during a focused inspection of Site 1, APHIS inspectors discovered two puppies in the basement of the house only after specifically asking if any dogs were housed in the basement. *Id.* ¶ 30.

10. Because of Gingerich's willful violations of the AWA, USDA issued a 21-day suspension of Gingerich's license, which went into effect on September 8, 2021. The notice of suspension states: "It is a violation of the Regulations to buy, sell, transport, exhibit, or deliver for transportation, any 'animal,' as that term is defined in the Act and the Regulations, during the period of suspension." Ex. A (Notice of Suspension). Gingerich is also prohibited from breeding his dogs during the suspension period.

11. During the suspension period, Gingerich called USDA and threatened to euthanize a number of dogs if USDA would not allow him to transfer the dogs to whomever he wanted. Maxwell Decl. ¶ 39. USDA had indicated that it would grant Gingerich an exception to the suspension if Gingerich donated (not sold) the dogs to the rescue organization that had purchased 13 dogs from him earlier in the month. It is apparent that Gingerich would prefer to euthanize dogs rather than donate them to someone who will provide them with the care they need.

12. Although it appears that Gingerich is not moving dogs at the approved sites during USDA's 21-days license suspension, USDA employees have received a number of calls from Gingerich and his employees indicating their desire to dispose of some dogs. Thus, it is likely that as soon as the suspension is lifted, Gingerich will immediately begin disposing of dogs.

13. USDA has informed me that Gingerich's class A license expires in October 2021. At least one of Gingerich's employees has indicated that Gingerich intends to let his license expire. Maxwell Decl. ¶ 40. This is not uncommon among AWA licensees who do not want to comply with the AWA. Those licensees incorrectly believe that, without a license, they will no longer be subject to the AWA or USDA oversight, despite the fact that they continue to conduct activities regulated by USDA. Voluntarily terminating the license or allowing the license to expire is a way of attempting to circumvent the law.

14. Based on Gingerich's past actions and violations, it is very likely that, before his license expires, Gingerich intends to transfer the rest of his dogs to unapproved sites or to place the dogs in the possession of other licensees or AWA license applicants, but still retain control over the dogs. *See e.g.* Maxwell Decl. ¶ 21 (individuals at unapproved location stated that Gingerich had transferred ownership of the dogs to them just that day); ¶ 23 (Gingerich contacting USDA to state that he moved the 150 dogs he had given to the individuals to his approved sites and another unapproved site). One of Gingerich's employees contacted USDA to ask whether a dog could be transported from one site to another to be bred. Maxwell Decl. ¶ 40. Thus, even if Gingerich's license does expire in a few weeks, Gingerich's employee's inquiry supports the conclusion that Gingerich has no intention of ceasing AWA-regulated activities.

15. Because Gingerich is failing to comply with the requirement that all dogs must be identified with an official tag, 9 C.F.R. § 2.50(a)(1), and the requirement to make, keep, and retain complete and accurate records on the acquisition and disposition of AWA-protected animals, it may be very difficult, if not impossible, to locate the dogs once he has relocated them. For example, on September 23, 2021, an APHIS employee followed up on a Certificate of Veterinary Inspection, which stated that seven dogs had been transferred from Gingerich's Site 1

5

to Naomi Gingerich at a location in Hillsboro, Ohio. Ex. E (Randy Coleman Declaration) ¶ 4. The APHIS employee visited the Hillsboro location and interviewed a woman who identified herself as Gingerich's wife. *Id.* She denied that the seven dogs had been transferred to that location. *Id.* To date, USDA does not know the whereabouts of those seven dogs.

16. USDA's 21-day suspension of Gingerich's license is set to expire at 11:59 p.m. on September 29, 2021. Absent a court order preventing him from disposing of his dogs by euthanasia or transfer, it is highly likely that those dogs will be killed or will disappear.

17. For these reasons, the United States urges the Court not to require notice of the government's motion for temporary restraining order and to enter a restraining order before the expiration of USDA's suspension of Gingerich's license. *See* Fed. R. Civ. P. 65(b)(1)(B).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 27th day of September, 2021.

*Mary Hollingsworth*
MARY HOLLINGSWORTH
Senior Trial Attorney
U.S. Department of Justice